NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 06a0259n.06
Filed: April 13, 2006

Nos. 05-5162/5304/5517

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| JAN DOE, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR THE |
| MAGOFFIN COUNTY FISCAL COURT; | ) | EASTERN DISTRICT OF KENTUCKY |
| PAUL HUDSON SALYER, Individually and | ) | |
| in his official capacity as County Judge | ) | |
| Executive, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

**Before: SUHRHEINRICH, ROGERS, and COOK, Circuit Judges.**

**ROGERS, Circuit Judge.** Jan Doe appeals the district court's order of summary judgment

that dismissed her federal and state claims concerning the defendants' hiring and supervising

practices. The Magoffin District Court ordered Doe, who was sixteen years old at the time of the

events surrounding this case, to complete community service at the Magoffin County Courthouse.

Doe alleges that she was under the supervision of defendant Paul Hudson Salyer, the Magoffin

County Judge Executive,[1] and Lloyd Monk Patton, the custodian of the courthouse. In July 2001,

Patton sexually assaulted and raped Doe at the courthouse. Patton was later found guilty of rape in

criminal proceedings. Although Doe has settled her civil claim against Patton, she has not settled

---

[1]A county judge executive is the "chief executive officer" of a county, and all executive power rests with him or her. Ky. Rev. Stat. §§ 67.705(1) and 67.710.

her claims against the Magoffin County Fiscal Court and against Salyer, in both his individual and official capacities.

We affirm the district court's grant of summary judgment in favor of the defendants as to all claims. Ultimately, the district court accurately summarized this case: "Patton's alleged acts are *reprehensible* and *unconscionable*. Whether Magoffin County and Salyer, however, are responsible for the alleged acts is another matter." JA 183. Doe's federal claims brought under 42 U.S.C. § 1983 fail because Doe has failed to create a genuine issue of material fact as to whether the defendants were deliberately indifferent to her constitutional rights in their hiring and supervising of Patton. Doe's state-law claims fail because sovereign or official immunity shields the defendants from suit. Finally, the fact that Doe provided an affidavit of an expert witness declaring that he believed that the defendants were negligent and deliberately indifferent does not create any genuine issue of material fact.

## I.

### *Background*

Jan Doe was sixteen years old when Magoffin District Court Judge Terry Jacobs ordered her to perform community service at the Magoffin County Courthouse. Doe alleges that she was assigned to work for Lloyd Monk Patton, the courthouse janitor. In July 2001, Patton sexually assaulted Doe by forcing her to touch his exposed penis. About an hour later, he locked her in the

courthouse's jury room during a recess in court proceedings and raped her. Patton was later convicted of first degree rape, and he is currently serving a sentence of ten years' imprisonment.

Paul Hudson Salyer, the Magoffin County Judge Executive, hired Patton as the courthouse's custodian with the unanimous approval of the Magoffin County Fiscal Court. Salyer and his wife Marcella, who served as Deputy County Judge Executive, were Patton's supervisors. Salyer testified that the Magoffin County Clerk asked him to hire Patton. The county clerk told Salyer that Patton had "been [working at the courthouse for] six months without pay and he's done an excellent job and he hadn't drank [sic] any in two years." JA 150.

Salyer also testified that he was unaware that Patton had a criminal record prior to Doe's lawsuit. Neither the Magoffin County Fiscal Court nor Salyer verified whether Patton had a criminal background. The defendants submitted an affidavit from paralegal Crystal Tucker. Tucker declared that she had performed a criminal search regarding Patton, and "at the time there were no convictions of any violent crimes regarding Mr. Patton in this criminal search." JA 74.

Salyer testified that he had never performed a criminal-background check on any employee. Dr. Charles Hardin, the former Magoffin County Judge Executive, was also deposed. He testified that he had never performed formal criminal-background checks when in office because "most people in a small community are pretty well known to the people of that community." JA 171.

After Doe filed her lawsuit, Salyer learned of Patton's criminal record. Patton told Salyer that Patton had served a term of imprisonment for attempted arson. Salyer also learned that in the

mid-1990s Patton had assaulted Dr. Hardin on Founder's Day by hitting Hardin over the head with a liquor bottle.[2] Salyer had run against Hardin three times for the office of Judge Executive. Salyer also testified that he knew that Patton had been banned at some point from the courthouse, but Salyer did not know why. Salyer testified that he would have hired Patton even if he had known of Patton's assault conviction. Patton continued working at the courthouse after Doe accused Patton of raping her.

Salyer testified that Patton had "at one time" supervised prisoners in the courthouse with Salyer's approval. JA 297. Salyer earlier testified, however, that "[Patton] was the janitor and we would just send him out there to help. We didn't give him no authority to supervise anyone. He was supposed to show them what to do and if they done it or if they didn't do it." JA 296. Salyer testified that he was unaware that the district court was ordering juveniles to complete community service at the courthouse and that Patton was supervising juveniles. Judge Jacobs, who ordered Doe to complete her community service at the courthouse, declared that he did not know that Patton supervised juveniles in the courthouse and that, based on his prior knowledge of Patton, he would not have consented to Patton's supervising juveniles.

---

[2]Doe states in her brief that Patton's criminal record includes twenty arrests. She alleges that fifteen of these arrests were for alcohol intoxication and that two were for disorderly conduct. She also alleges that Patton was found guilty twice of vote fraud. Doe, however, points to (and we have uncovered) no evidence in the record to support her assertions.

*Procedural History*

Doe filed her complaint in federal district court. She brought federal and state claims concerning the hiring and supervising of Patton. She named Patton, in both his individual and official capacities, and the Magoffin County Fiscal Court as defendants. She also asserted state-law claims of assault, battery, and outrageous conduct. Over a year later, Doe amended her complaint to add claims against Salyer in his individual capacity and in his official capacity as County Judge Executive.

The defendants filed a motion for summary judgment. Doe filed a response and memorandum opposing summary judgment. She included in her motion an affidavit from Joseph Smith. Smith had previously been appointed by United States District Judge Joseph M. Hood as an expert witness in a case concerning allegedly discriminatory hiring practices in another Kentucky county. Smith declared that, after reviewing relevant depositions and affidavits, he found it unconscionable that Salyer did not know that Patton was supervising juveniles. He also stated that he believed that the failure to complete a criminal-background check played a "substantial role in causing harm to the juvenile." JA 147. He declared that Salyer's entrusting of a female juvenile to a custodian with a criminal background was in "wanton disregard of the rights of the juvenile." JA 148.

The district court granted the defendants' motion for summary judgment on all claims.[3] The district court, referring to *Board of County Commissioners v. Brown*, 520 U.S. 397 (1997), held that Doe's federal hiring and supervising claims failed as a matter of law because Patton's criminal background did not make it "plainly obvious" that Patton would commit rape. The district court next held that, under Kentucky law, sovereign immunity barred Doe's state-law claims against the Magoffin County Fiscal Court and Salyer in his official capacity. Finally, the court held that Salyer was entitled to official qualified immunity under Kentucky law for the state-law claims against him in his individual capacity because he performed his discretionary functions in good faith. The district court did not mention the affidavit of Joseph Smith.

Doe then filed a motion to reconsider. Doe primarily asked the district court to consider (for the first time) *Yanero v. Davis*, 65 S.W.3d 510 (Ky. 2002), the case in which the Supreme Court of Kentucky discussed all forms of immunity recognized by federal and state law. In *Yanero*, the state supreme court recognized that, under Kentucky law, there is a narrow exception to the rule that hiring decisions are discretionary. The supreme court noted that public officers, when sued in their individual capacities, have a ministerial duty not to hire employees who are "incompetent to perform the task for which [they were] hired." *Yanero*, 65 S.W.3d at 528. The district court held that *Yanero* did not compel the district court to alter any of its original findings. Patton was competent to serve as a janitor, and his occasional supervision of others was not "the task for which he was hired." JA

---

[3]The district court did not grant summary judgment as to the claims against Patton in his individual capacity. Doe, however, later settled those claims against Patton.

209. The district court also held that Salyer's supervision of Patton was not ministerial because Salyer was not bound by any statutory or regulatory requirements.

Doe next moved the district court to set aside judgment. Doe pointed to Marcella Salyer's testimony during Patton's criminal trial, which took place after entry of judgment in Doe's civil action. During the criminal trial, Marcella Salyer referred to Doe as a "little girl," and described an incident when, in Patton's presence, she saw Doe dressed and positioned provocatively. JA 239. She said that the encounter left her "concerned." JA 239. Doe noted in her motion that Marcella Salyer had not mentioned this encounter in her civil deposition. The district court held that this "new evidence" did not alter its earlier holdings.

Doe now appeals, and we have consolidated the three appeals that she filed from orders of the district court.

**II.**

We review de novo the district court's grant of summary judgment. *See United States v. Miami Univ.*, 294 F.3d 797, 805 (6th Cir. 2002). Summary judgment is appropriate only when no genuine issue of material fact exists and when the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We must view the facts contained in the record and draw all inferences from the record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). We cannot weigh the evidence or determine the truth of any matter in dispute, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), because this

court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the nonmoving party, *id.* at 248-49.

With this standard in mind, we affirm.  Doe's § 1983 claims fail because Doe has failed to create a genuine issue of material fact as to whether the defendants were deliberately indifferent to her constitutional rights in hiring and supervising Patton.  Doe's state-law claims for negligent hiring and supervision fail because sovereign or official immunity shields the defendants from these claims.  Finally, because the affidavit from Joseph Smith offers only a short recitation of general facts and legal conclusions, it is not sufficient to create a genuine issue of material fact and thereby preclude summary judgment.

**III.**

All of Doe's federal claims fail because she has failed to create a genuine issue of material fact as to whether the defendants acted with deliberate indifference when first hiring and then supervising Patton.

As a preliminary matter, we shall assume that Patton, who is no longer a party to this suit, violated § 1983 by sexually assaulting and raping Doe and that he would not be entitled to qualified immunity.  Section 1983 states, "Every person who, under color of [state law or custom] subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and

laws, shall be liable to the party injured . . . ." Assuming that Patton acted under color of state law,[4] his sexual assault violated Doe's substantive due process right to bodily integrity. This court has previously held that "no rational individual could believe that sexual abuse by a state actor is constitutionally permissible under the Due Process Clause" and that a citizen has "a clearly established right under the substantive component of the Due Process Clause to personal security and to bodily integrity . . . ." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507 (6th Cir. 1996). Therefore, we assume that Doe would have a cause of action against Patton under § 1983.

### 1.    Federal Hiring Claims

Although Patton may have been liable, the remaining defendants are not liable under § 1983 for Patton's transgressions. Doe's federal claims against the defendants regarding how Patton was hired fail as a matter of law because Patton's background did not make it "plainly obvious" that Patton would rape Doe. Doe cannot demonstrate that the fiscal court had a policy or custom in place that deprived her of her federal constitutional rights because she has not proffered any evidence to demonstrate that "*this* officer [Patton] was highly likely to inflict the *particular* injury suffered by the plaintiff." *Brown*, 520 U.S. at 412. Doe has also failed to demonstrate that Salyer, by hiring Patton, was deliberately indifferent to her constitutional rights.

Municipalities cannot be held liable simply because they employ tortfeasors. *See Brown*, 520 U.S. at 403. In *City of Canton v. Harris*, the Supreme Court held that:

---

[4]The district court held that Patton was acting under color of state law. *See* JA 176-77.

- 9 -

> [A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue. *Respondeat superior* . . . will not attach under § 1983. It is only when the execution of the government's policy or custom . . . inflicts the injury that the municipality may be held liable under § 1983.

489 U.S. 378, 385 (1989) (internal quotations and citations omitted). A policy or custom ensures that "a municipality is held liable only for those deprivations resulting from the decisions of its duly constituted legislative body or of those officials whose acts may fairly be said to be those of the municipality." *Brown*, 520 U.S. at 403-04.

The Supreme Court has placed a heavy burden on plaintiffs seeking to impose municipal liability as a result of hiring decisions; the Court requires that the plaintiff demonstrate (1) sufficient fault in the form of "deliberate conduct" and (2) a causal link between the alleged policy or custom and the injury. *See Brown*, 520 U.S. at 404. The Supreme Court's decision in *Brown* compels us to hold that Doe has failed to meet her heavy burden. In *Brown*, a sheriff hired a deputy who, in making an arrest, used excessive force by severely damaging the knee caps of an arrested person. The sheriff had not paid attention to the deputy's criminal record or driving record, both of which the sheriff had obtained, when he hired the deputy. The records revealed driving infractions and misdemeanor convictions for public drunkenness, assault, battery, and resisting arrest. *Id.* at 401-02. The parties agreed that the sheriff was the final policy maker for the Sheriff's Department. *Id.* at 401. The Court held that the plaintiff's claim against the municipality failed as a matter of law because the sheriff and county were not deliberately indifferent to the plaintiff's federal constitutional rights. Adequate scrutiny of the deputy's background did not reveal that it would be "highly likely" that "*this* officer

[would] inflict the *particular* injury suffered by the plaintiff." *Id.* at 412. In other words, the deputy's convictions for assault, drunkenness, and resisting arrest did not make it "plainly obvious" that the deputy would use excessive force. *Id.* at 411. The Court stated that it was not enough that the deputy was an "extremely poor candidate" for his job. *See id.* at 414.

Like the municipality in *Brown*, the fiscal court is not liable because Doe cannot demonstrate that any policy or custom of the fiscal court in its hiring practices caused her constitutional injury.[5] Adequate scrutiny of Patton's criminal record would not reveal that it was highly likely that Patton would sexually assault a juvenile or lock her in a room against her will. First, the defendants submitted evidence, which Doe does not challenge with any record evidence, that Patton's criminal record does not reveal violent crimes. Second, the crimes with which Patton was allegedly charged do not demonstrate any propensity to commit sex crimes or to imprison someone. At most, the record demonstrates that Patton was convicted of vote fraud, attempted arson, and battery against a male politician while Patton was drunk. As in *Brown,* Patton may have been an "extremely poor candidate" for his job as custodian or even supervisor, *see Brown*, 520 U.S. at 414, but his convictions do not make it "plainly obvious" that Patton would commit sexual assault or falsely imprison someone.

---

[5]We assume, without deciding, that the fiscal court and Salyer were the final policy makers for hiring decisions. The county judge executive has the power to appoint and supervise personnel with the approval of the fiscal court. Ky. Rev. Stat. § 67.710(7). We have also assumed, as the Supreme Court did in *Brown*, that one hiring decision can qualify as a policy or custom. *See Brown*, 520 U.S. at 412.

Contrary to Doe's argument, Patton's battery of a man, even if characterized as a crime of violence, does not make it plainly obvious that Patton would commit rape. In *Brown*, the deputy had convictions for assault and battery; nevertheless, the Supreme Court held that these convictions did not make it plainly obvious that the deputy would use excessive force. In Doe's case, Patton's prior battery against a man in the mid-1990s did not make it obvious that he would commit a sexual crime against a female years later. In light of *Brown*, the mere fact that a prior crime and the later constitutional violation both include violence is not sufficient to demonstrate that the fiscal court was deliberately indifferent.

Doe's case is not salvaged by the fact that the fiscal court and the county judge executives never performed criminal-background checks on potential employees. The fact that the sheriff in *Brown* normally performed background checks before hiring candidates arguably distinguishes this case from *Brown*. It is also conceivable that a custom or policy of failing to perform criminal-background checks might amount to "deliberate indifference" to the particular constitutional rights of others if, immediately or over time, the consequences of failing to perform the background checks were known or obvious. *See Canton*, 489 U.S. at 390 n.10. Doe has not pointed to any other instance in which the Magoffin County Fiscal Court's failure to perform background checks caused another to be deprived of his or her constitutional rights. Moreover, both Dr. Hardin and Salyer testified in their depositions that background checks were unnecessary because everyone knows everyone else in the county. The mere fact that one employee committed a crime does not demonstrate that Magoffin County's custom of not performing background checks was sure to lead to constitutional

deprivations, especially when scrutiny of Patton's record would not have revealed that he was highly likely to commit rape or imprison someone. Because Doe has failed to demonstrate that any custom of the Magoffin County Fiscal Court was the "moving force" behind the injury alleged, Doe's federal hiring-practices claims against the Magoffin County Fiscal Court and Salyer in his official capacity fail as a matter of law.

Finally, Salyer is not liable in his individual capacity for his hiring practice because he was not deliberately indifferent to Doe's constitutional right to substantive due process. It is true that in *Brown* the claim against the sheriff in his individual capacity had been dismissed prior to trial and that issue had not been appealed. *See Brown*, 520 U.S. at 401. But it is clear that for suits both against municipalities and individual-capacity supervisors, "[r]espondeat superior is not a proper basis for liability under § 1983." *McQueen v. Beecher Cmty. Sch.*, 433 F.3d 460, 470 (6th Cir. 2006). Moreover, it is clear that negligence or recklessness is not enough to hold supervisors liable under § 1983. *Doe*, 103 F.3d at 513. Because the Supreme Court's concern in *Brown*—that municipalities not become vicariously liable—is equally implicated when supervisors are sued in their individual capacities, *Brown*'s analysis is relevant to Doe's claim against Salyer in his individual capacity. As with Doe's claims against the fiscal court and Salyer in his official capacity, Doe has not established that Salyer was deliberately indifferent to her rights in hiring Patton. Therefore, all of Doe's federal hiring-practices claims fail as a matter of law.

> 2.      *Federal Claims for Failure to Supervise*

> > a.      *Claims against the Fiscal Court and Salyer in his Official Capacity*

From the briefs and complaint, it is unclear whether Doe brings a federal claim for failure to supervise against the fiscal court and Salyer in his official capacity. But even assuming that Doe brings federal claims for failure to supervise against these defendants, her claims fail as a matter of law. Doe neither identifies any policy or custom that she challenges, nor alleges that the fiscal court affirmatively condoned sexual abuse. *See Doe*, 103 F.3d at 508. The only claim she conceivably has is that the fiscal court's custom of not supervising its employees amounted to deliberate indifference through inaction. *See id.*

Doe, nevertheless, has not satisfied the requirements for an "inaction" theory. To state a municipal liability claim under an "inaction" theory, Doe must establish:

> (1) the existence of a clear and persistent pattern of sexual abuse by [fiscal court] employees;
>
> (2) notice or constructive notice on the part of the [fiscal court];
>
> (3) the [fiscal court's] tacit approval of the unconstitutional conduct, such that [its] deliberate indifference in [its] failure to act can be said to amount to an official policy of inaction; and
>
> (4) that the [fiscal court's] custom was the "moving force" or direct causal link in the constitutional deprivation.

*Doe*, 103 F.3d 508. Doe cannot establish the first requirement of an inaction theory. Doe has not even alleged the existence of a pattern of sexual abuse, much less pointed to any evidence in the

record, to reveal that a pattern existed. The only sexual abuse in evidence is Doe's rape. Therefore, whatever the nature of her federal claims for failure to supervise against the fiscal court and Salyer in his official capacity, Doe's claims fail as a matter of law.

Furthermore, Doe's claims cannot survive under the theory that one event of sexual abuse is sufficient to establish that the fiscal court was deliberately indifferent. In *Canton*, the Supreme Court left open the possibility "that evidence of a single violation of federal rights, accompanied by a showing that a [fiscal court] failed to train its employees to handle recurring situations presenting an obvious potential for such a violation, could trigger municipal liability." *Brown*, 520 U.S. at 409. The Court in *Brown* later stated that one incident may be sufficient because "[t]he high degree of predictability may . . . support an inference of causation—that the municipality's indifference led directly to the very consequence that was so predictable." *Id.* at 409-10. There is no basis to conclude on this record, however, that there was a "high degree of predictability" that Patton or any other employee was likely to rape anyone, especially considering that Patton's background does not reveal any inclination to assault another sexually. The intentional, violent act that a custodian performed far outside the scope of his duties cannot be something that was "obvious" to occur.

Finally, the testimony of Marcella Salyer does not demonstrate that the fiscal court was deliberately indifferent to Doe's constitutional rights when supervising Patton. As the district court held, Mrs. Salyer's testimony revealed only that the defendants may have known that she was a juvenile and that Mrs. Salyer was concerned about Doe's provocative dress and body position. Her testimony does not demonstrate in any way that Mrs. Salyer had reason to believe that Patton would

forcibly assault or imprison Doe. Whatever negligence Mrs. Salyer committed, her response to *Doe's* dress and actions is not relevant to the foreseeability of *Patton's* later conduct. Mrs. Salyer's testimony does not reveal that she was deliberately indifferent. Therefore, under no theory of municipal liability can a federal claim by Doe for failure to supervise survive summary judgment.

     b.  *Claim against Salyer in his Individual Capacity*

Doe's federal claim against Salyer in his individual capacity fails because there is no evidence that Salyer, in supervising Patton, was deliberately indifferent to Doe's constitutional rights. Doe "must show that, in light of the information the defendants possessed, the [employee] who engaged in sexual abuse 'showed a strong likelihood that he would attempt to' sexually abuse [another], such that the 'failure to take adequate precautions amounted to deliberate indifference' to the constitutional rights of [others]." *Doe*, 103 F.3d at 513. Moreover, "the supervisor [must have] 'either encouraged the specific incident of misconduct or in some other way directly participated in it.'" *McQueen*, 433 F.3d at 470 (quoting *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). There is no evidence that Salyer had any information, either from Patton's criminal record or his job performance, that indicated that Patton was likely to abuse another sexually. Furthermore, there is no evidence whatsoever that Salyer encouraged or was directly involved in Doe's rape. Doe has thus failed to create a genuine issue of material fact as to whether Salyer, in his individual capacity, is liable for his supervision of Patton.

**IV.**

Doe's state-law claims fail because the defendants are shielded from liability by sovereign or official immunity under Kentucky law.

    *1.      State-Law Claims for Negligent Hiring*

            *a.      Claims against the Fiscal Court and Salyer in his Official Capacity*

Doe's state-law claims of negligent hiring against the fiscal court and Salyer in his official capacity are barred by sovereign immunity. Sovereign immunity bars state-law actions against county governments. *See Schwindel v. Meade County*, 113 S.W.3d 159, 163 (Ky. 2003). Kentucky courts have treated fiscal courts as county governments and thus have permitted fiscal courts to share sovereign immunity with county governments. *See Bd. of Claims of Ky. v. Banks*, 31 S.W.3d 436, 439 (Ky. Ct. App. 2000) ("Because the Board of Claims Act does not expressly waive sovereign immunity for counties, the Board was correct in finding that it had no jurisdiction of . . . claim[s] against the Powell County Fiscal Court."); *see also Expert Masonry, Inc. v. Boone County, Ky., Fiscal Ct.*, 440 F.3d 336, 339 n.1 (6th Cir. 2006) ("'Fiscal Court' is the name that Kentucky traditionally assigns to county government bodies."). Unless the fiscal court waives its immunity, sovereign immunity protects the fiscal court from state-law claims. *See Schwindel*, 113 S.W.3d at 163. Doe has not pointed to any evidence indicating that the Magoffin County Fiscal Court has

waived its immunity. Therefore, sovereign immunity bars Doe's state-law claim of negligent hiring against the fiscal court.[6]

Sovereign immunity also protects Salyer from Doe's claims against him in his official capacity. Under Kentucky law, an officer sued in his official capacity receives the same kind of immunity that protects the state or governmental agency for which he or she works. *See Yanero v. Davis*, 65 S.W.3d 510, 521-22 (Ky. 2002). Because Salyer is an employee of the county, he is entitled to the same sovereign immunity that the fiscal court receives.

b. *Claim against Salyer in his Individual Capacity*

Salyer, in his individual capacity, is entitled to official qualified immunity from Doe's state-law claim of negligent hiring. "[I]n their individual capacities, public officers and employees enjoy . . . qualified official immunity, which affords protection from damages liability for good faith

---

[6]The district court held that "Magoffin County had a minimal ministerial duty to not hire someone 'incompetent' to perform janitorial services . . . ." JA 209. Kentucky law, however, does not impose this minimum ministerial duty on fiscal courts, counties, or officers sued in their official capacities. Kentucky law imposes this duty only on public officers sued in their individual capacities. In *Yanero*, the Supreme Court of Kentucky said, "[T]here is authority for the proposition that a public officer can be subject to personal liability in tort for hiring an employee known to that officer to be incompetent to perform the task for which he/she was hired." 65 S.W.3d at 528. The *Yanero* court discussed this minimal ministerial duty only in the context of its opinion concerning claims against public employees in their individual capacities. Moreover, the case to which the supreme court referred, *Whitt v. Reed*, concerned only claims against public officials in their individual capacities. 239 S.W.2d 489, 491 (Ky. 1951) ("The petition alleges that the Superintendent, Principal, Maintenance Supervisor and Janitor were negligent in the performance or non-performance of their ministerial duties. The allegations stated a cause of action against them as individuals."). Therefore, this ministerial duty exception does not apply to Doe's claims against the fiscal court or Salyer in his official capacity.

judgment calls made in a legally uncertain environment.  Qualified official immunity applies to the negligent performance by a public officer . . . of (1) discretionary acts or functions . . . ; (2) in good faith; and (3) within the scope of the employee's authority."  *Yanero*, 65 S.W.3d at 522.  Salyer satisfies this three-part inquiry and is thus entitled to state-law qualified official immunity.

First, Salyer's decision to hire Patton and not to perform a background check were discretionary functions because Salyer was not enforcing or failing to enforce any particular order or rule.  *See id.* at 528.  Doe has not identified any order, regulation, or statute that required Salyer to perform a background check or consider certain factors when hiring his staff.  Indeed, Salyer and his predecessor Dr. Hardin both testified that background checks were unnecessary in Magoffin County because everyone knows everyone else.  Doe has failed to make any showing that Salyer's decisions regarding hiring were not discretionary.

Second, Doe does not contend that Salyer was not acting within the scope of his authority when making his hiring decisions.  Kentucky law empowers county judge executives to hire staff. Ky. Rev. Stat. § 67.710(7).  Thus, Salyer satisfies the second prong of Kentucky's qualified immunity analysis.

Finally, Salyer hired Patton in good faith as a matter of law.  The Supreme Court of Kentucky has "held that qualified immunity would be defeated if an official '*knew or reasonably should have known* that the action he took within his sphere of official responsibility would violate the constitutional rights of the [plaintiff], *or* if he took the action *with the malicious intention* to cause

a deprivation of constitutional rights . . . .'" *Yanero*, 65 S.W.3d at 523 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982)). Doe has the burden of demonstrating that Salyer did not act in good faith. *See id.* As previously discussed in the section of this opinion concerning Doe's federal hiring-practices claims, there was no constitutional violation in this case by Salyer in his individual capacity because he did not act with deliberate indifference in hiring Patton. Just as there is no evidence of deliberate indifference in this record, there is also no evidence of malicious intent to deprive Doe of her constitutional right to bodily integrity or her right to be free from unreasonable seizures. Salyer is therefore entitled to qualified official immunity under Kentucky law.

Doe's case is not helped by the state supreme court's recognition that hiring entails a ministerial aspect that precludes public officers from hiring an employee who is not competent "to perform the task for which he/she was hired." *See Yanero*, 65 S.W.3d at 528. Despite Patton's criminal history, he was competent to perform janitorial duties. Doe has not alleged, much less pointed to evidence in the record suggesting, that Patton was not qualified to be the courthouse janitor. Moreover, as the district court held, "[w]hile [Patton] may have occasionally been ordered to oversee people performing community service on an informal basis, this was not 'the task for which he was hired.'" JA 209. Doe even concedes that he was hired as a janitor, not as a supervisor. *See* Doe's Reply Br. at 4. ("[T]he [Appellees] . . . claim that Mr. Patton was hired as a janitor, not hired to supervise juveniles. The Appellant agrees . . . ."). Therefore, Salyer did not breach his recognized but limited duty to hire employees who were competent "to perform the task for which [they were] hired."

- 20 -

2.      *State-law Claims for Negligent Supervision*

As with Doe's state-law claims for negligent hiring, Doe's claims for negligent supervision against the fiscal court and Salyer in his official capacity are barred by sovereign immunity. Her claims for negligent supervision against Salyer in his individual capacity are barred by qualified official immunity. Doe contends, however, that the defendants have no immunity when sued for negligent supervision because supervision is a ministerial function. Doe argues that qualified immunity does not apply to ministerial functions and that Kentucky has waived sovereign immunity when a state or county employee negligently performs a ministerial function. Doe's contention fails.

Statements in *Williams v. Kentucky Department of Education,* 113 S.W.3d 145 (Ky. 2003)*,* and *Yanero* that teachers perform a ministerial task when supervising students do not apply to this case, and thus Salyer is entitled to state-law qualified official immunity in his individual capacity in response to Doe's negligent-supervision claims. In her brief, Doe claims that the Supreme Court of Kentucky has "reiterated that it is 'well-established' that sovereign immunity is not applicable to *individuals* being sued for 'negligent supervision.'" Doe's Br. at 24 (emphasis added). The state supreme court, however, has not made such a broad statement; instead, the court has held that "[i]t is well established in this jurisdiction that a *school teacher* can be held liable for injuries caused by negligent supervision *of his/her students*." *Williams*, 113 S.W.3d at 148 (referring to *Yanero*, 65 S.W.3d at 529) (emphasis added). The state supreme court held that teachers are not entitled to immunity when supervising students because the teachers' duty to supervise students arises from state statutes and regulations and is thus ministerial. *See id.* at 150-51 (describing some of the statutes and

regulations to which teachers are bound). In contrast, Salyer is entitled to qualified immunity because Doe has identified no regulation, statute, or administrative framework in this case that requires Salyer's obedience. Because Doe has not demonstrated that Salyer's supervision of Patton was ministerial, Salyer is entitled to qualified official immunity regarding Doe's negligent-supervision claim.

Because Salyer's duty to supervise was not ministerial, the fiscal court and Salyer in his official capacity are entitled to sovereign immunity from negligent-supervision claims premised on vicarious liability. In *Williams*, the state supreme court held that the administrator of a deceased student's estate could bring claims against the Kentucky Department of Education and the local county school board of education in Kentucky's Board of Claims under a theory of vicarious liability for teachers' failure to supervise students. 113 S.W.3d at 155-56. The supreme court noted that the state had waived its immunity from suits brought in the state board of claims concerning "'all negligence claims for the negligent performance of ministerial acts,'" *id.* at 155 (quoting Ky. Rev. Stat. § 44.073(2)), and that teachers, pursuant to statutes and rules, had a ministerial duty to supervise students, *id.* at 150-51. Salyer's duty to supervise, unlike the teachers', was not ministerial. The legislature's waiver of sovereign immunity for ministerial acts, therefore, does not apply here, and the fiscal court and Salyer in his official capacity are entitled to sovereign immunity. Furthermore, no suit against the fiscal court or Salyer in his official capacity for independent tort liability can lie because Doe has not identified any statute or regulation that these defendants were required to

enforce when supervising their employees. For these reasons, *Williams* does not deprive any defendant of immunity in this case.

Moreover, even if the duty to supervise Patton were ministerial, the defendants did not breach this duty because the harm that resulted was not foreseeable. The state supreme court in *Williams* held that the ministerial duty to supervise requires that "administrators . . . take all reasonable steps to prevent *foreseeable* harm to [their] students." *See id*. at 148 (italics added). Where there is no foreseeability, there is no duty under Kentucky law. *See M & T Chems., Inc. v. Westrick*, 525 S.W.2d 740, 741 (Ky. 1974). In *Z.A. ex rel. S.A. v. City of Louisville*, No. 2004-CA-001189-MR, 2005 WL 1491554, at *4 (Ky. Ct. App. June 24, 2005), the Court of Appeals of Kentucky held that, as a matter of law in a negligent-supervision claim, a library staff could not have foreseen that one of its computer-lab assistants would sexually assault a juvenile, even though that same assistant had displayed a picture with sexual overtones on an overhead projector three weeks earlier. In this case, Doe has not pointed to any kind of evidence that would potentially put Salyer on notice that Patton would sexually abuse another. Because Salyer had no notice, constructive or otherwise, that Patton would sexually assault or imprison Doe, Salyer owed no duty to Doe to prevent the unforeseeable harm that occurred. Doe's state-law claims for negligent supervision also fail because the harm that occurred was unforeseeable.

**V.**

The district court's failure to mention whether it considered Joseph Smith's affidavit does not require us to reverse the district court's order granting summary judgment for the defendants. In *Williams v. Ford Motor Co.*, this court held that "[a]lthough expert testimony may be more inferential than that of fact witnesses, in order to defeat a motion for summary judgment an expert opinion must be more than a conclusory assertion about ultimate legal issues." 187 F.3d 533, 543 (6th Cir. 1999) (quoting *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993)). *Williams* also referred approvingly to *Merit Motors, Inc. v. Chrysler Corp.*, 569 F.2d 666, 673 (D.C. Cir. 1977), which stated that "[t]he evidentiary rules regarding expert testimony at trial were not intended . . . to make summary judgment impossible whenever a party had produced an expert to support its position" (internal quotation marks omitted). Smith's affidavit presents only incorrect, conclusory statements of law and thus does not preclude summary judgment.

Smith's first contention—that the defendants' failure to investigate employees' criminal backgrounds was in "wanton disregard of the rights of the juvenile"—is simply incorrect in light of this opinion that has considered the same facts. *See Thomas Noe, Inc. v. Homestead Ins. Co.*, 173 F.3d 581, 584 (6th Cir. 1999) ("Given our conclusion that Exclusionary Clause 5.D [in an insurance contract] is unambiguous, it is clear that evidence of [an expert's] contrary conclusion is inadmissible."). Smith next contends that Patton's conduct was foreseeable in light of his past violent crimes. But, as this opinion has already held, *Brown* forecloses this argument as to Doe's § 1983 claims. The deputy in *Brown* also had convictions for violent crimes, but the Supreme Court held

that those convictions were insufficient to demonstrate that the hiring sheriff was deliberately indifferent to the plaintiff's constitutional rights.  Moreover, as a matter of law, it was not foreseeable that Patton would sexually assault Doe, *see City of Louisville*, 2005 WL 1491554, so Smith's contrary conclusion is incorrect under Kentucky law.  Simply having experts restate general facts and announce legal conclusions without any analysis does not create a genuine issue of material fact. Therefore, the district court's failure to consider the affidavit amounts at most to harmless error because the declarations in the affidavit do not preclude summary judgment.

## VI.

For the foregoing reasons, we AFFIRM the orders of the district court.