NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0596n.06

No. 09-6115

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

LESTER EUGENE SILER; JENNY SILER, )
next friends D.S. (a minor), )
                                  )
       Plaintiffs-Appellants, )
                                    )
v. )
                                    )
GERALD DAVID WEBBER; SAMUEL R. )
FRANKLIN; JOSHUA MONDAY; SHAYNE )
GREEN; WILLIAM CARROLL; CHARLES )
SCOTT, Individually and in their official )
capacities as Campbell Co. Sheriffs' Deputies; )
RON MCCLELLAN, Individually and in his )
official capacity as Sheriff of Campbell )
County; CAMPBELL COUNTY, TN, )
                                    )
       Defendants-Appellees. )

FILED

*Aug 22, 2011*

LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF TENNESSEE

Before: GUY, COOK, and STRANCH, Circuit Judges.

COOK, Circuit Judge. After five police officers physically assaulted Lester Siler, Plaintiffs brought state- and federal-law claims against the officers, two of their supervisors (the Supervisors), and Campbell County, Tennessee (the County). The Supervisors and the County moved for summary judgment. The district court declined to exercise supplemental jurisdiction over the state-law claims, granted summary judgment to the County on the remaining federal-law claims, and denied as moot summary judgment to the Supervisors, finding that Plaintiffs alleged only state-law claims against them. Plaintiffs now challenge the district court's grant of summary judgment, denial

of certain discovery motions, and failure to consider their complaint constructively amended to allege federal-law claims against the Supervisors. We affirm on all fronts.

I.

On July 8, 2004, five County law-enforcement officers—Gerald Webber, Samuel Franklin, Joshua Monday, Shayne Green, and William Carroll—went to Lester Siler's residence to investigate drug-related complaints. Upon arrival, the five officers took Siler's wife and son outside, handcuffed Siler to a chair, and gave him an ultimatum: either he sign a form allowing them to search his home, or they would obtain his consent by force.

Brutal acts of abuse soon followed. The officers threatened to break Siler's fingers; to beat him; to burn him; and to kill him. One of the officers attached wires from a battery charger to Siler and threatened to electrocute him. Another placed a handgun in his mouth and threatened to shoot him. When threats alone failed to succeed, the officers proceeded to inflict pain. They slapped him, punched him, and kicked him; they beat him with a number of objects, including a gun, a slapjack, and a plastic bat. All of this occurred in the general presence of Siler's family. And, unbeknownst to the officers, Siler's wife recorded part of it on tape.

The incident at the Siler residence sent each of the five officers to prison and spawned civil litigation in state and federal court. In the instant action, Siler brought § 1983 claims against the five

officers and the County, *see* 42 U.S.C. § 1983; and state-law claims against the officers, the County, and two of the officers' supervisors, Sheriff Ron McClellan and Chief Deputy Charles Scott.

The County and the Supervisors moved for summary judgment, arguing that liability for the incident fell solely on the five offending officers. The Supervisors further argued that they were entitled to various immunities on the state-law claims. And, though the Supervisors contended that Plaintiffs failed to allege § 1983 claims against them, they claimed that they would also enjoy qualified immunity under § 1983 in any event.

Discovery issues plagued Plaintiffs' response. Plaintiffs requested, and received, four extensions of time to respond to the motion. Nearly one month after they did respond, Plaintiffs moved under Rule 56(f) to obtain additional discovery to supplement the response. *See* Fed. R. Civ. P. 56(f) (2008). The magistrate denied this motion and stayed further discovery, finding that Plaintiffs had ample time to oppose summary judgment. Plaintiffs then filed a Rule 56(e) motion to supplement their response with evidence from a parallel state-court action, *see* Fed. R. Civ. P. 56(e) (2008), which the magistrate also denied. The district court denied objections to both magistrate orders.

With the trial date for their parallel state-court action looming, Plaintiffs moved the district court to decide whether it would accept supplemental jurisdiction over their state-law claims, or whether they should instead proceed in state court. The district court declined to exercise supplemental jurisdiction and dismissed the state-law claims without prejudice.

Tackling the merits of Defendants' summary-judgment motion on the remaining federal claims, the district court issued a thorough fifty-six-page order. It denied as moot the portion of the motion addressing the Supervisors' liability, as the complaint alleged only state-law claims against them. And it granted summary judgment to the County. The court held that the County was not vicariously liable for its officers' actions under § 1983, and that Plaintiffs failed to provide evidence on which a jury could reasonably find that a County policy caused their injuries.

## II.

Plaintiffs now challenge the district court's (A) grant of summary judgment to the County; (B) denial of their Rule 56 motions; and (C) failure to consider their complaint constructively amended to include § 1983 claims against the Supervisors.

A.      Grant of Summary Judgment to the County

Plaintiffs first contend that the district court improperly granted summary judgment to the County on their § 1983 claim. They argue that (1) the County bears vicarious liability for its officers' actions, and (2) various County policies nonetheless caused their injuries.

We review a grant of summary judgment anew, "view[ing] the factual evidence and draw[ing] all reasonable inferences in favor of the nonmoving party." *Napier v. Madison Cnty.*, 238 F.3d 739, 741–42 (6th Cir. 2001). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(c). To withstand summary judgment, the nonmovant must point to "evidence on which the jury could reasonably find for the [nonmovant]." *Napier*, 238 F.3d at 742 (alteration in original) (internal quotation marks and citation omitted).

1.      Vicarious Liability

Section 1983 creates a federal cause of action against "[e]very person who, under color of [law,] . . . subjects . . . any citizen . . . to the deprivation of any rights . . . secured by the Constitution." 42 U.S.C. § 1983. Though municipalities are "persons" within the meaning of § 1983, they "may not be sued . . . for an injury inflicted solely by [their] employees or agents," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978); they bear responsibility only for "their *own* illegal acts," *Pembaur v. City of Cincinnati*, 475 U.S. 469, 478–79 (1986).

Notwithstanding *Monell*'s clear prohibition against vicarious liability, Plaintiffs contend that Tennessee law overrides it. They point to Tenn. Code Ann. § 8-8-302, which creates a state-law cause of action against a county for "any . . . injury . . . resulting from any act or failure to act on the part of [a] deputy." And, noting that 42 U.S.C. § 1988 requires courts to apply state law in federal civil-rights actions, they argue that we must apply Tennessee's vicarious-liability statute here.

Yet Plaintiffs tell only half of § 1988's story: it applies state law to federal actions to the extent that doing so "is not inconsistent with the . . . laws of the United States." 42 U.S.C. § 1988. On one side, *Monell* and its progeny hold that § 1983 prohibits vicarious municipal liability; on the

other side, Tenn. Code Ann. § 8-8-302 allows it. Tennessee law thus conflicts with § 1983 and may not be used to maintain a federal action in this instance. *See, e.g.*, *Palmer v. Sanderson*, 9 F.3d 1433, 1438 (9th Cir. 1993) (holding that, after *Monell*, "a state statute imposing vicarious liability on a sheriff for the conduct of his or her deputies is 'inconsistent with the . . . laws of the United States,'" and thus may not be applied in a § 1983 action (alteration in original) (quoting 42 U.S.C. § 1988)); *Henderson v. Reyda*, No. 3:03CV703, 2005 WL 1397030, at *7 (E.D. Tenn. June 13, 2005) (construing Tenn. Code Ann. § 8-8-302), *aff'd*, 192 F. App'x 392 (6th Cir. 2006); *see also Wilson v. Morgan*, 477 F.3d 326, 332–33 (6th Cir. 2007) (rejecting similar argument that § 1988(a) required application of Tennessee law in a federal civil rights case).

2.      County Policies

Plaintiffs next argue that, even if the County bears no vicarious liability for its officers' actions, a number of its own policies caused their injuries. They allege that the incident at the Siler residence arose from the County's policies of failing to (a) reprimand officers' use of excessive force against suspects, (b) train officers before placing them on duty, and (c) screen officers before employing them.

Municipalities face policy-based liability under § 1983 only if a plaintiff demonstrates "that, through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged." *Bd. of Cnty. Comm'rs v. Brown*, 520 U.S. 397, 404 (1997). Where, as here, a plaintiff points to a municipal policy of *inaction* as the municipality's "deliberate conduct," the plaintiff must show that

the municipality's failure to act constitutes "deliberate indifference" to the plaintiff's constitutional rights, *see id.* at 407, and "directly caused" the plaintiff's injury, *see id.* at 415. With limited exceptions, deliberate indifference must be established with evidence that the municipality ignored a pattern of similar constitutional violations. *See id.* at 409.

Because Plaintiffs offer no evidence establishing a pattern of constitutional violations under any of their municipal-policy theories, and fail to argue that their case falls into an exception to the pattern rule, we hold that no reasonable jury could find the County deliberately indifferent to Plaintiffs' constitutional rights. *See Napier*, 238 F.3d at 742.

### a. Failure to Reprimand

Plaintiffs first contend that the County had "a custom or policy of allowing its officers to abuse individuals," and support their claim with an affidavit from Officer Jackie Miracle. Miracle attests that, "on or about 2004," a number of unspecified officers abused a suspect they pulled over for a traffic stop. Miracle further attests that "Chief Deputy Charles Scott stood by and watched the passenger of the vehicle being abused" without "reprimand[ing] any of the [o]fficers involved."

In *Thomas v. City of Chattanooga*, a case involving similar allegations of officer abuse, we explained that to prove a municipality's deliberate indifference in this context, a plaintiff must show, among other things, that the municipality ignored "the existence of a clear and persistent pattern of [illegal activity]" by officers. 398 F.3d 426, 429 (6th Cir. 2005) (alteration in original) (internal

quotation marks and citation omitted). Though those plaintiffs submitted affidavits establishing that forty-five excessive-force suits had been filed against the city in the eight years before the relevant incident, *id.* at 430, we found that these complaints did not constitute a "clear and persistent" pattern of illegal conduct in the absence of "data showing what a 'normal' number of excessive force complaints would be," *id.* at 431.

Like the *Thomas* plaintiffs, Plaintiffs here fail to support their claim regarding "the existence of a clear and persistent pattern" of illegal activity by County officers. *See id.* at 429. Indeed, Plaintiffs offer even less than their *Thomas* counterparts: they do not point to any complaint of excessive force, nor do they produce any lawsuit on the matter. Rather, they put forth a lone affidavit from an officer who claims that he witnessed a single instance of abuse. Even if we assume the truth of the affidavit, the isolated incident described therein falls short of *Thomas'*s pattern requirement. *See id.*

b.      Failure to Train

Plaintiffs next argue that the County should face liability for its "policy of not training and supervising the deputies it hired." In support of their claim, they point to a number of exhibits demonstrating that, at the time of the incident, Monday, Green, and Carroll had not yet attended the academy for training or achieved academy certification.

Because "[a] municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train," "[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference." *Connick v. Thompson*, 131 S. Ct. 1350, 1359–60 (2011) (internal quotation marks and citation omitted); *see also Fisher v. Harden*, 398 F.3d 837, 849 (6th Cir. 2005).

In arguing for failure-to-train liability, Plaintiffs misconstrue this pattern requirement. They hinge their claim on the premise that, "on many occasions," the County inadequately trained its officers. But even if widespread training inadequacies exist, this is not the relevant pattern for deliberate indifference: a plaintiff must offer evidence of a pattern of *constitutional violations* attributable to training shortcomings. As already discussed, the Miracle affidavit is the only evidence suggesting prior officer misconduct. Plaintiffs thus present no evidence of "[a] pattern of similar constitutional violations by untrained employees," which "is ordinarily necessary" to demonstrate the County's deliberate indifference. *Connick*, 131 S. Ct. at 1360 (internal quotation marks and citation omitted).

There is, however, a potential exception to this general rule. In *City of Canton v. Harris*, 489 U.S. 378 (1989), "the Court left open the possibility that, in a narrow range of circumstances, a pattern of similar violations might not be necessary to show deliberate indifference" in the failure-to-train context. *Connick*, 131 S. Ct. at 1361 (internal quotation marks and citation omitted). Such a

circumstance could occur if the injury alleged were a "patently obvious" consequence of the deficiency in the training program. *Id.*; *see also Brown*, 520 U.S. at 409–10.

Plaintiffs do not, and cannot, argue that theirs is one of the "narrow range of circumstances" hypothesized by *Canton*, as the officers' shocking conduct was not a "patently obvious" consequence of any training deficiency. Our precedent confirms that "[t]he intentional, violent act that a [police officer] performed far outside the scope of his duties cannot be something that was 'obvious' to occur." *Mize v. Tedford*, 375 F. App'x 497, 501 (6th Cir. 2010) (second alteration in original) (quoting *Doe v. Magoffin Cnty. Fiscal Court*, 174 F. App'x 962, 970 (6th Cir. 2006)); *see also Stemler v. City of Florence*, 126 F.3d 856, 866 (6th Cir. 1997).

c.     Failure to Screen

Plaintiffs go on to contend that the County "had a policy of not checking the criminal backgrounds of the individuals it hired." They highlight the records of two officers: Daniel Pedrin, who had a citation for operating a motor vehicle without a valid driver's license, and Green, who was charged with—but not convicted of—one count of domestic violence, and who had two civil orders of protection against him.

"Cases involving constitutional injuries allegedly traceable to an ill-considered hiring decision pose the greatest risk that a municipality will be held liable for an injury that it did not cause."

*Brown*, 520 U.S. at 415. Like failure-to-train claims, a "pattern of injuries" caused by failures to screen is thus "ordinarily necessary to establish" deliberate indifference. *Id.* at 409–10.

Again, Plaintiffs offer no relevant pattern; but again, there exists a potential pattern exception. The *Brown* Court "assum[ed] without deciding" that it could import *Canton* into the failure-to-screen context, making a municipality liable if "a full review of [the offender's] record reveals that . . . [the offender's] use of excessive force would be a *plainly obvious consequence* of the hiring decision." *Id.* at 412–13 (emphasis added). The Court noted that "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury," but "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff." *Id.* at 412. Though the officer in *Brown* had convictions for assault and resisting arrest, the Court held that his use of excessive force—pulling a suspect from a vehicle and injuring her knees—was not a "plainly obvious consequence of the hiring decision." *Id.* at 414.

Plaintiffs pose no argument that their screening claim falls within *Brown*'s pattern exception. Nor can they: here, the officers had milder backgrounds, and performed more brutal acts, than the officer in *Brown*. Though, like the *Brown* officer, Officer Green's domestic violence charges and protection orders "may well have made him an extremely poor candidate for . . . deputy," *id.*, Plaintiffs cannot show that these shortcomings made it "highly likely" that he would "inflict the *particular* injury suffered by [them]," *id.* at 412.

B.      Rule 56 Motions

Plaintiffs next contend that the blame for any deficiency in their response falls squarely on the district court, as it denied them "a meaningful opportunity to investigate, discover[,] and present evidence in opposition to [the] County's motion for summary judgment."   They challenge the court's denial of their Rule 56(f) and (e) motions to supplement their response, which we review for an abuse of discretion.  *See Jackson v. Int'l Fiber Corp*, 395 F. App'x 275, 279 (6th Cir. 2010); *Stipkala v. Am. Red Cross*, No. 99-3099, 2000 WL 712378, at *6 (6th Cir. May 23, 2000) (per curiam).

1.      Rule 56(f)

Plaintiffs had six months, including four separate extensions of time, to prepare their summary-judgment response; but this, according to them, was not enough.  In their Rule 56(f) motion, filed nearly one month after their response was finally filed, Plaintiffs argued that they needed yet more time, and additional discovery, to supplement their response due to many reasons, including the neglect of prior co-counsel, the entrance of new co-counsel, and the deficiency of discovery exchanges.  *See* Fed. R. Civ. P. 56(f) (2008) ("If a [non-movant] shows . . . it cannot present facts essential to justify its opposition, the court may . . . order a continuance to enable . . . discovery to be undertaken . . . .").

We find no abuse of discretion in the district court's conclusion that none of Plaintiffs' complaints justified re-opening the already drawn-out summary-judgment process.  As to the issues

with Plaintiffs' counsel, the magistrate rightly noted that "clients must be held accountable for the acts and omissions of their attorneys." *See Jackson,* 395 F. App'x at 280 (explaining that plaintiffs "whose counsel failed to pursue appropriate discovery [cannot] simply switch counsel and seek to reopen discovery pursuant to Rule 56(f)" (internal quotation marks and citation omitted)). And as to Plaintiffs' resulting discovery complaints, the magistrate reasonably explained that their four extensions of time provided them with ample opportunity to resolve any disputes. The district court properly evaluated the magistrate's order, agreed with its reasoning, and denied the objections. *See* 28 U.S.C. § 636(b)(1)(a).

Challenging this conclusion, Plaintiffs first offer a procedural argument. They interpret the magistrate's order not as denying their Rule 56(f) motion, but as staying it pending a ruling on qualified immunity. Based on this interpretation, they contend that, after the court decided not to reach the § 1983 claims against the Supervisors, it should have granted the Rule 56(f) motion with respect to the County. Its failure to do so, Plaintiffs argue, resulted in them being unfairly "denied discovery to oppose [the] County's motion for summary judgment."

But Plaintiffs misunderstand the nature of the magistrate's order. In opposing Plaintiffs' Rule 56(f) motion, Defendants argued that the court should deny the motion, noted that Plaintiffs filed this and other motions in a "blitz of discovery," and requested a stay of all discovery pending a ruling on qualified immunity. The magistrate agreed with Defendants, unambiguously denied—not stayed—the Rule 56(f) motion, and stayed further discovery. The district court's decision not to resolve the

qualified-immunity issue thus had no bearing on the already-denied Rule 56(f) motion, and Plaintiffs had no entitlement to further summary-judgment discovery against the County.

Plaintiffs next point to various discovery issues as reasons why the district court should have granted their Rule 56(f) motion. The crux of their argument appears to be that neither party had fully complied with its disclosure requirements at the time that Plaintiffs filed their response, which made it impossible for them to adequately oppose summary judgment.

Plaintiffs raised these issues in their original motion, and we have little to add beyond the magistrate's reasoning: Plaintiffs had plenty of time and leeway to resolve discovery issues, and they must suffer the consequences of their attorneys' failure to do so. *See Jackson*, 395 F. App'x at 280 (noting that "[a] request for relief under Rule 56(f) is extremely unlikely to succeed when the party seeking the delay has failed to take advantage of discovery," and that the motion "will not be applied to aid a party who has been lazy or dilatory" (internal quotation marks and citation omitted)). We specifically note that Plaintiffs had a simple remedy for any disclosure issues, one that they failed to implement at any point prior to their response: the filing of a motion to compel.

In any event, Plaintiffs offer no citation to authority in their Rule 56(f) discussion, and do not even attempt to tie any of their bases for relief to the abuse-of-discretion standard. Accordingly, we find that the court acted within its discretion in deciding that, after four extensions and six months of preparation, Plaintiffs' efforts to bolster their response must end.

2. Rule 56(e)

Plaintiffs next attempted to do through Rule 56(e) what they could not do through Rule 56(f). Six weeks after the court denied their Rule 56(f) motion, Plaintiffs filed a Rule 56(e) motion seeking to supplement their response with discovery they obtained from their companion state-court action and from recent Rule 26(a) disclosures in the instant case. *See* Fed. R. Civ. P. 56(e)(1) (2008) ("The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories, or additional affidavits.").

This understandably did not sit well with the magistrate, who denied the motion, or with the district court, which denied Plaintiffs' objections and noted that the motion attempted to "circumvent" the magistrate's prior Rule 56(f) ruling. As the court explained, it had already decided that Plaintiffs may not supplement their response, and Plaintiffs could not achieve a different result through a similar vehicle.

Plaintiffs now ask us to find this denial improper, contending that the evidence they intended to introduce could properly be admitted under Rule 804(a)(5) because of its unavailability at the time they filed their response. *See* Fed. R. Evid. 804(a)(5) (2008). This contention is misguided: the court denied the motion not because of admissibility concerns, but because it attempted to override the court's prior ruling. And, without more, it is inapposite: Plaintiffs again cite no authority to support treating this denial as an abuse of discretion.

C.      Rule 15(b)

Plaintiffs finally argue that the district court mistakenly failed to consider federal claims against the Supervisors when ruling on summary judgment.  Though Plaintiffs acknowledge that they pleaded no § 1983 claims against the Supervisors, they contend that the court should have deemed their complaint constructively amended under Rule 15(b) because the issue was "tried by the parties' express or implied consent," Fed. R. Civ. P. 15(b)(2) (2008), as evidenced by the Supervisors including a section on qualified immunity in their answer and motion.  The court, they persist, "failed to apply [Rule] 15(b)" to the issue of the Supervisors' § 1983 liability.

But the court did not "fail to apply" Rule 15(b)—Plaintiffs never asked it to.  At no point did Plaintiffs move for leave to amend their complaint; nor did they argue, in opposing summary judgment, that the court should resolve claims against the Supervisors because the parties had already constructively amended the complaint under Rule 15(b).  Indeed, Plaintiffs declined to request amendment, or raise a Rule 15(b) argument, even after the Supervisors twice noted that Plaintiffs failed to plead § 1983 claims against them.

These circumstances amount to a forfeiture.  *See Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 552 (6th Cir. 2008) ("[A]n argument not raised before the district court is [forfeited] on appeal to this Court.").  District courts read motions, not minds, and nothing requires them "to distill any possible argument which could be made based on the materials before [them]." *Blue Cross & Blue Shield of Ala. v. Weitz*, 913 F.2d 1544, 1550 (11th Cir. 1990).  Presenting Rule 15(b) arguments "is the

responsibility of the non-moving party, not the court, and Rule 15(b) provides no basis for [a] court to consider [them] for the first time on appeal." *Id.*

Moreover, even if Plaintiffs had properly raised their Rule 15(b) argument, it would fail on its merits: Plaintiffs have not shown that the § 1983 issue was "tried by the parties' . . . consent," for the Supervisors opposed such trial. *See* Fed. R. Civ. P. 15(b)(2). In moving for summary judgment, the Supervisors argued that "Plaintiffs' Complaint does not assert a claim under 42 U.S.C. § 1983 against them," and they proceeded with a § 1983 argument only "out of an abundance of caution." And, when Plaintiffs failed to address this issue in their response, the Supervisors noted that "Plaintiffs do not argue that [the] Motion . . . misconstrues their complaint, which asserts [only] state law causes of action" against them.

III.

For these reasons, we affirm.